## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAZER & LAZER CORPORATION dba LAZER CAPITAL,<br><br>Plaintiff,<br><br>v.<br><br>AGRONOMED PHARMACEUTICALS LLC; AGRONOMED HOLDINGS INC.; AGRONOMED BIOLOGICS LLC; and AGRI-KIND LLC.<br><br>Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## **PLAINTIFF'S COMPLAINT**

Plaintiff, Lazer & Lazer Corporation dba Lazer Capital ("Lazer" or "Plaintiff"), by and through its attorneys, Bernstein-Burkley, P.C., files the within Complaint against Agronomed Pharmaceuticals LLC, Agronomed Holdings Inc., Agronomed Biologics LLC, and Agri-Kind LLC (collectively, "Defendants") and alleges as follows:

## **PARTIES**

1. Plaintiff is a Canadian corporation with a principal office located at 150 King Street West, #200, Toronto, Ontario.

2. Defendant Agronomed Pharmaceuticals LLC ("Agro Pharmaceuticals") is a Pennsylvania Limited Liability Company with a principal office located at 102 Broomall Street, Chester, Pennsylvania 19013 and registered address of 740 Springdale Drive, Suite 130, Exton, Pennsylvania 19341.

3. Defendant Agronomed Holdings Inc. ("Agro Holdings") is a Pennsylvania Corporation with a registered address of 740 Springdale Drive, Suite 130, Exton, Pennsylvania 19341.

4. Defendant Agronomed Biologics LLC ("Agro Biologics") is a Pennsylvania Limited Liability Company with a registered address of 740 Springdale Drive, Suite 130, Exton, Pennsylvania 19341.

5. Defendant Agri-Kind LLC ("Agri-Kind") is a Pennsylvania Limited Liability Company with a principal office located at 102 Broomall Street, Chester, Pennsylvania 19013 and registered address of 740 Springdale Drive, Suite 130, Exton, Pennsylvania 19341.

## JURISDICTION/VENUE

6. This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the citizenship of the Plaintiff and Defendants is diverse and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

7. Venue is proper under 28 U.S.C. § 1391 because all of the Defendants reside within the Eastern District of Pennsylvania, and the events or omissions giving rise to the claims set forth in this Complaint occurred in this judicial district.

## FACTUAL BACKGROUND

8. Lazer is a Toronto based merchant bank that, among other things, offers an array of services in connection with business transactions, including general strategic advisory and analytical services and strategic introductions.

9. Lazer has extensive experience successfully introducing and advising various businesses in consummating transactions, many involving leading companies and hundreds of millions of dollars.

10. One company Lazer has worked with in recent years is Verano Holdings Corp. ("Verano"), a multi-billion dollar Chicago based company.

11. In July 2019 Greg Lipschitz ("Lipschitz"), a Chartered Financial Analyst employed by Lazer, reached out via email to introduce himself and discuss potential investment and strategic partnership opportunities with Jon Cohn ("Cohn").

12. Cohn is the founder and CEO of defendants Agro Pharmaceuticals and Agri-Kind.

13. On information and belief, Mr. Cohn is also the CEO of defendants Agro Holdings and Agro Biologics.

14. Mr. Cohn had actual and apparent authority to act on behalf of Defendants, and acted within the scope of such authority, at all times and with respect to all acts or omissions relevant to the allegations of this Complaint.

15. On or about July 30, 2019 Lipschitz and Cohn had a phone call during which they discussed, *inter alia*, the Defendants' business operations and plans.

16. Lipschitz and Cohn corresponded intermittently over the months that followed.

17. Lipschitz again reached out to schedule a phone call with Cohn on May 28, 2020. During that call, they discussed opportunities for Defendants to collaborate with or be acquired by Verano.

18. Later that same day Lipschitz sent an email stating that he and Dean Lazer (Lazer's founder) had spoken with Verano President Sammy Dorf ("Dorf"), whom he copied on the email, and asked Cohn when he would be free to chat to discuss potential opportunities/collaborations with Verano.

19. This email resulted in a June 1, 2020 phone call among Lipschitz, Dean Lazer, Dorf, and Cohn, during which a potential acquisition of Defendants by Verano was discussed.

20. Following this call the participants executed Non-Disclosure Agreements; Cohn sent financial information to Lazer and Verano; and a follow-up Zoom call was scheduled for June 4, 2020.

21. On June 3, 2020, Lipschitz and Cohn had a separate phone call regarding Defendants' formal retention of Lazer for its advisory and introductory services in relation to their prospective transaction with Verano.

22. Following that call Lipschitz sent an email to Cohn stating "We're excited to work with you" and attaching Lazer's standard engagement agreement, entitled "Strategic Business Services Agreement" (the "Agreement").

23. With respect to fees for Lazer's services, the terms of the Agreement provided, in substance, that if the Defendant entities were acquired by Verano, Lazer would be entitled to payment of a fee equal to 3% of the total consideration paid to the Defendants or their security holders in connection with such transaction.

24. Cohn replied that his board was not comfortable with Lazer's 3% fee, explaining that his partners had previously entered a contract for similar services which provided for fees of 2% for a transaction with consideration of up to $110 million and 3.5% for any amounts over $110 million.

25. Cohn stated "if you guys are willing to take the same 2 [sic] deal, we are OK signing the engagement" and "Please let me know, and if we OK with this deal, we are happy to move forward."

26. Lipschitz replied by email on June 4, 2020 and agreed to the fee structure proposed by Cohn, stating: "Yes we are in agreement to change the terms to 2% up to $110m and 3.5% for an amount greater than $110m. If you can make those changes, that'd be great."

4

27. Thus, the parties had a meeting of the minds as to the fee Lazer was to be paid by Defendants if they consummated a transaction with Verano.

28. Cohn informed Lipschitz that he would not yet execute the Agreement because his counsel had advised that some language contained therein should be revised to clarify certain regulatory matters.

29. Lipschitz addressed those matters and proposed revisions in an email dated June 5, 2020, then followed up with Cohn on June 9th to inquire whether his legal team was satisfied.

30. In a June 10, 2020 email Cohn replied that he would be "OK signing" the Agreement, but was under the impression that Verano did not intend "to move forward anyway."

31. Cohn assured Lipschitz that Lazer's fees would be paid if that changed and a deal was consummated with Verano:

> That being said, if Verano does move forward on this transaction, we do commit to paying the fees to you guys (and signing your agreement) at the time of next steps (or now if we just make the agreement scoped to Verano). They also haven't sent over their financials, etc. so it leads me to believe they probably aren't interested.

32. On June 11, 2020 Lipschitz replied that Verano's apparent disinterest was because it was occupied with closing another transaction, but based upon Cohn's commitment to paying Lazer's fees agreed that the Agreement could be finalized at a later time.

33. Later in June 2020 Verano did manifest continued interest in a transaction with Defendants, and those parties resumed discussions and worked towards a deal over the following months.

34. Lipschitz and Lazer performed various services in furtherance of that process, to include facilitating and coordinating meetings between Verano and Defendants; a site visit and tour by Verano's CEO; and the exchange of due diligence materials.

35. In addition, Lipschitz expended significant time and effort working to organize, review, analyze and summarize Defendants' business and financial records in a Dropbox "data room," such that the information could be used and understood by the parties to the transaction.

36. Thanks to the introduction Lazer made and the services it performed, on or about April 22, 2021 Verano and Defendants consummated a transaction and entered into agreements for Verano to purchase all equity interests in Agri-Kind, Agro Holdings and Agro Biologics, which were subsidiaries of and/or owned in whole or in part by Agro Pharmaceuticals.

37. The consideration that Defendants and/or their security holders have received or will receive through the transaction in a combination of cash and stock consideration totals $175,500,000.

38. Additional consideration of up to $31,500,000 may also be received in the form of a performance-based earnout.

39. On April 23, 2021, Lipschitz emailed Cohn to congratulate him on the Defendants' deal with Verano and ensure that Lazer's fees were being properly accounted for in the transaction.

40. Despite his explicit promise on June 10, 2020 that Lazer's fees would be paid "if Verano does move forward on this transaction," Cohn replied that "we never signed any agreements" and has refused to pay or cause Lazer to be paid any fees as he had agreed on behalf of Defendants.

## COUNT I
### Breach of Contract

41. The preceding paragraphs of this Complaint are hereby incorporated by reference as though fully set forth herein.

42. Cohn, acting as the CEO and/or authorized agent and representative of Defendants, agreed and promised that if Verano acquired the Defendant entities Lazer would be paid fees equal

to 2% of the consideration received by Defendants or their security holders for any amounts up to $110 million, and 3.5% of any amounts over $110 million.

43. Cohn's agreement and promise to pay such fees to Lazer constitutes a valid, binding and enforceable contract between Lazer and Defendants.

44. Defendants and Verano have consummated a transaction for Verano to acquire Agri-Kind, Agro Holdings, and Agro Biologics for consideration of $175,500,000.00, plus an earnout of up to $31,500,000.

45. Accordingly, Lazer is contractually entitled to payment of a fee of 2% of the first $110 million of the aforesaid consideration and 3.5% of the remaining $65,500,000.00, for a total of $4,492,500.00, plus 3.5% of any consideration received through the earnout.

46. Defendants, through Cohn, have failed and refused to pay any portion of the fee to which Lazer is entitled, which refusal constitutes a material breach of contract.

47. As a direct and proximate result of Defendants' breach of the contract, Lazer has suffered damages in an amount not less than $4,492,500.00.

WHEREFORE, Plaintiff demands judgment in its favor in an amount not less than $4,492,500, as well as pre-judgment interest at the legal rate, and all other awards, fees, and costs as may be awarded in this action.

## COUNT II
**Promissory Estoppel**

48. The preceding paragraphs of this Complaint are hereby incorporated by reference as though fully set forth herein.

49. Lazer pleads this Count in the alternative.

50. Cohn, acting as the CEO and/or authorized agent and representative of Defendants, agreed and promised that if Verano acquired the Defendant entities Lazer would be paid fees equal

7

to 2% of the consideration received by Defendants or their security holders for any amounts up to $110 million, and 3.5% of any amounts over $110 million.

51. In reliance on this promise, Lazer rendered substantial and valuable services for Defendants including, *inter alia*, analyzing Defendants' business model and plans; arranging the introduction and initial meeting between Defendants and Verano which culminated in the aforementioned transaction; facilitating and coordinating subsequent meetings, a site visit and tour by Verano's CEO, and the exchange of due diligence materials; and organizing, reviewing, analyzing and summarizing Defendants' business and financial records in the Dropbox "data room."

52. Lazer further relied on Cohn's promise to forebear from demanding that the written Agreement be finalized and executed before performing the aforesaid services.

53. Cohn knew or should have reasonably expected that his promise would induce Lazer to act and forebear to act in the foregoing manner in reliance on the promise.

54. As a direct and proximate result of Defendants' refusal to pay any of the fees promised to Lazer despite their consummation of the transaction with Verano, Lazer has suffered damages in an amount not less than $4,492,500.00, which is an injustice that can only be avoided by enforcing the promise Cohn made to Lazer on behalf of Defendants.

WHEREFORE, Plaintiff demands judgment in its favor in an amount not less than $4,492,500.00, as well as pre-judgment interest at the legal rate, and all other awards, fees, and costs as may be awarded in this action.

## COUNT III
**Unjust Enrichment**

55. The preceding paragraphs of this Complaint are hereby incorporated by reference as though fully set forth herein.

56. Lazer pleads this Count in the alternative.

57. Lazer rendered substantial and valuable services for Defendants including, *inter alia*, analyzing Defendants' business model and plans; arranging the introduction and initial meeting between Defendants and Verano which culminated in the aforementioned transaction; facilitating and coordinating subsequent meetings, a site visit and tour by Verano's CEO, and the exchange of due diligence materials; and organizing, reviewing, analyzing and summarizing Defendants' business and financial records in the Dropbox "data room."

58. Lazer's services conferred substantial benefits which have been received and appreciated by Defendants, namely, the consummation of a transaction in which Defendants and/or their security holders have received or will receive consideration with a value of at least $175,500,000.00 and up to an additional $31,500,000.00 from Verano.

59. Lazer conferred those benefits upon Defendants with the full knowledge and at the request of Cohn, and in reliance on Cohn's express promise on behalf of Defendants that Lazer would be paid for its services with a value equal to 2% of the consideration received by Defendants or their security holders for any amounts up to $110 million, and 3.5% of any amounts over $110 million.

60. Accordingly, if and to the extent Defendants are deemed not to be bound by the promise to pay that Cohn made on their behalf, Defendants have been unjustly enriched in an amount not less than $4,492,500.00 by receiving and enjoying the benefit of Lazer's services.

WHEREFORE, Plaintiff demands judgment in an amount not less than $4,492,500, as well as pre-judgment interest at the legal rate, and all other awards, fees, and costs as may be awarded in this action.

## COUNT IV
### Fraudulent Inducement

61. The preceding paragraphs of this Complaint are hereby incorporated by reference as though fully set forth herein.

62. Lazer pleads this Count in the alternative.

63. Cohn, acting as the CEO and/or authorized agent and representative of Defendants, represented and promised that if Verano acquired the Defendant entities Lazer would be paid fees equal to 2% of the consideration received by Defendants or their security holders for any amounts up to $110 million, and 3.5% of any amounts over $110 million.

64. In justifiable reliance on this representation, Lazer rendered substantial and valuable services for Defendants including, *inter alia*, analyzing Defendants' business model and plans; arranging the introduction and initial meeting between Defendants and Verano which culminated in the aforementioned transaction; facilitating and coordinating subsequent meetings, a site visit and tour by Verano's CEO, and the exchange of due diligence materials; and organizing, reviewing, analyzing and summarizing Defendants' business and financial records in the Dropbox "data room."

65. Lazer further relied on Cohn's representation to forebear from demanding that the written Agreement be finalized and executed before performing the aforesaid services.

66. Cohn knew and intended that his representation would induce Lazer to act and forebear to act in the foregoing manner in reliance on the representation.

67. If and to the extent Defendants contend that it was not the intention of Cohn or Defendants to pay Lazer's fees as Cohn represented, then Cohn on behalf of Defendants fraudulently induced Lazer to act and forebear from acting in the aforesaid manner by intentionally and falsely misrepresenting their intention pay Lazer's fees.

68. As a direct and proximate result of the misrepresentation fraudulently made by Cohn on behalf of Defendants, and Lazer's justifiable reliance thereon, Lazer has suffered damages in an amount not less than $4,492,500.00.

WHEREFORE, Plaintiff demands judgment in an amount not less than $4,492,500.00, as well as pre-judgment interest at the legal rate, punitive damages, and all other awards, fees, and costs as may be awarded in this action.

Dated: May 17, 2021

                                                    Respectfully submitted,

By: */s/ Kirk B. Burkley*
Kirk B. Burkley, Esquire
PA ID: 89611
John J. Richardson, Esq.
PA ID: 86045
Bernstein-Burkley, P.C.
707 Grant Street
Suite 2200, Gulf Tower
Pittsburgh, PA 15219
(412)-456-8107 Telephone
(412) 456-8135
jrichardson@bernsteinlaw.com